COPY

FILED
2009 JAN 29 PM 2:57
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ____

1  CRAIG J. CANNIZZO (State Bar No. 70379)
   MICHAEL A. DUBIN (State Bar No. 212581)
2  FELICIA Y. SZE (State Bar No. 233441)
   **HOOPER, LUNDY & BOOKMAN, INC.**
3  575 Market Street, 23rd Floor
   San Francisco, CA. 94105
4  Telephone: (415) 875-8500
   Facsimile: (415) 875-8519
5  E-Mail: ccannizzo@health-law.com

6  BYRON J. GROSS (State Bar No. 76626 )
   LLOYD A. BOOKMAN (State Bar No. 89251)
7  JORDAN B. KEVILLE (State Bar No. 217868)
   **HOOPER, LUNDY & BOOKMAN, INC.**
8  1875 Century Park East, Suite 1600
   Los Angeles, California 90067-2517
9  Telephone: (310) 551-8111
   Facsimile: (310) 551-8181
10

   Attorneys for Plaintiffs
11

12              **UNITED STATES DISTRICT COURT**

13   **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

14

15  CALIFORNIA PHARMACISTS              CV09-00722 CAS (Ex)
    ASSOCIATION; CALIFORNIA MEDICAL
16  ASSOCIATION; CALIFORNIA DENTAL      CASE NO.
    ASSOCIATION; CALIFORNIA HOSPITAL
17  ASSOCIATION; CALIFORNIA             **COMPLAINT**
    ASSOCIATION FOR ADULT DAY
18  SERVICES; MARIN APOTHECARY, INC.
    d/b/a ROSS VALLEY PHARMACY; SOUTH
19  SACRAMENTO PHARMACY; FARMACIA
    REMEDIOS, INC.; ACACIA ADULT DAY
20  SERVICES; SHARP MEMORIAL HOSPITAL;
    GROSSMONT HOSPITAL CORPORATION;
21  SHARP CHULA VISTA MEDICAL CENTER;
    SHARP CORONADO HOSPITAL AND
22  HEALTHCARE CENTER; FEY GARCIA and
    CHARLES GALLAGHER,
23
              Plaintiffs,
24
       vs.
25
    DAVID MAXWELL-JOLLY, DIRECTOR OF
26  THE CALIFORNIA DEPARTMENT OF
    HEALTH CARE SERVICES;
27
              Defendant.
28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2018549.4

COMPLAINT

**JURISDICTION AND VENUE**

1.      Plaintiffs California Pharmacists Association ("CPhA"), California Medical Association ("CMA"), California Dental Association ("CDA"), California Hospital Association ("CHA"), the California Association for Adult Day Services ("CAADS"), Marin Apothecary, Inc. d/b/a Ross Valley Pharmacy, South Sacramento Pharmacy, Farmacia Remedios, Inc., Acacia Adult Day Services, Sharp Memorial Hospital, Grossmont Hospital Corporation, Sharp Chula Vista Medical Center, Sharp Coronado Hospital and Healthcare Center Fey Garcia and Charles Gallagher bring this complaint pursuant to 28 U.S.C. section 1331, the Supremacy Clause and 42 U.S.C. section 1983.  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14 (1983).  This court further may compel Defendant David Maxwell-Jolly, Director of the California Department of Health Care Services (the "Director") to comply with the mandatory provisions of the federal Medicaid law pursuant to 28 U.S.C. § 1361.

2.      Venue lies in this judicial district under 28 U.S.C. § 1391, in that the Director has offices within this judicial district and is thus deemed to reside within this judicial district.

**INTRODUCTION**

3.      California's Medicaid program, Medi-Cal[1], is a major component of the "safety net" that ensures the State's poor have access to health care services. Unfortunately for those who depend on it to access basic healthcare services, the low rates at which the State currently pays providers to care for Medi-Cal patients have created a gaping hole in that net.  Health care providers of virtually every type have been steadily leaving the Medi-Cal program or scaling back services because the rates they are being paid are not even sufficient to cover the costs they incur in

---

[1] For the purposes of this pleading, the term "Medi-Cal" is used to encompass all components of the California Medi-Cal program, including Denti-Cal.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2018549.4

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  providing services.  The exodus of providers from the program is leaving massive

2  numbers of Californians without access to critical services or is forcing them to

3  obtain care in the already over-crowded and increasingly scarce emergency

4  departments of hospitals throughout the state.  Despite this disturbing state of

5  affairs and an injunction prohibiting the reduction of Medi-Cal rates for certain

6  providers, California has decided to reduce Medi-Cal rates again, without regard to

7  the impact of these reductions.

8       4.     The deterioration of the California safety net is perhaps most evident in

9  Los Angeles County, where, in some areas, the healthcare system is now in crisis.

10  Emergency room and hospital closures in Los Angeles County make Los Angeles

11  County especially vulnerable to reductions in Medi-Cal payments.  As other

12  providers limit their participation in the Medi-Cal program, increasing numbers of

13  patients will seek care at Los Angeles County's remaining emergency rooms, which

14  will have to struggle operationally and financially to care for them.

15       5.     By this action, several groups of Medi-Cal providers (physicians,

16  dentists, pharmacies, hospitals, and adult day health care centers ("ADHCs")) seek

17  an injunction to invalidate and stop the implementation of additional cutbacks in

18  Medi-Cal rates that were mandated by the California Legislature and are scheduled

19  to take effect on March 1, 2009 as to all services except inpatient hospital services.

20  The new rate reductions for inpatient hospital services became effective October 1,

21  2008.  These decreases in payments will drastically impair payments to, and

22  accordingly, participation, by physicians, dentists, pharmacies, hospitals, ADHCs

23  and many other providers of health services, creating significant gaps in access for

24  Medi-Cal beneficiaries.

25       6.     Such reductions are illegal because California failed to fulfill its legal

26  mandate to ensure that Medi-Cal payment rates are sufficient to enlist enough

27  providers so that beneficiaries have access to health care services to the extent such

28  services are available to the general insured public.  The rates are invalid as the State

2018549.4

1  failed to ensure that those rates are consistent with efficiency, economy, quality of

2  care and sufficiency of access.  The State further violated federal law by enacting

3  the rate reductions without the proper public process required for rate adjustments.

4  In fact, by its terms, these rate reductions require an amendment to the California

5  Medi-Cal State Plan, which may not be implemented prior to federal approval.

6       7.    For these and other reasons, these rate reductions violate federal law.

7  The imposition of these rate reductions will cause irreparable injury to Plaintiffs,

8  their members and the populations they serve, both providers and beneficiaries.

9  Causing providers of services to withdraw from the Medi-Cal program because

10  reimbursement levels will fall so far below the costs of providing services, the rate

11  reductions will threaten the health of beneficiaries by interrupting provider/patient

12  relationships and by resulting in the inability of many beneficiaries to obtain

13  necessary health care.  Accordingly, Plaintiffs seek declaratory and injunctive relief

14  to prevent the rate reductions from taking effect.

15

16  <center>**FEDERAL MEDICAID LAW**</center>

17       8.    Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, the

18  Medicaid Act, authorizes federal financial support to states for medical assistance to

19  low-income persons who are aged, blind, disabled, or members of families with

20  dependent children.  The program is jointly financed by the federal and state

21  governments and administered by the states, with the federal financial participation

22  level currently ranging between 50 to 83 percent.  The states, in accordance with

23  federal law, decide eligible beneficiary groups, types and ranges of services,

24  payment level for services, and administrative and operative procedures.  Payment

25  for services is made directly by states to the individuals or entities that furnish the

26  services.  42 C.F.R. § 430.0.

27       9.    In order to receive matching federal financial participation, states must

28  agree to comply with the applicable federal Medicaid law and regulations, 42

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   U.S.C. §§ 1396 *et seq*. Once a state has decided to participate in the Medicaid

2   program, compliance with the federal Medicaid law and regulations is mandatory.

3        10.   At the state level, the Medicaid program is administered by a single

4   state agency, which is charged with the responsibility of establishing and complying

5   with a state Medicaid plan (the "State Plan") that, in turn, must comply with the

6   provisions of the applicable federal Medicaid law.  42 U.S.C. § 1396a(a)(5) and 42

7   C.F.R. §§ 430.10 and 431.10.  The State Plan must be submitted to the Secretary of

8   the United States Department of Health and Human Services (the "Secretary") for

9   approval and must describe the policies and methods to be used to set payment rates

10   for each type of service included in the state Medicaid plan.  42 C.F.R. §§ 430.10

11   and 447.201(b).  Changes to the State Plan may not be implemented by the state

12   prior to being approved by the Secretary.

13        11.   Each State's Medicaid plan must provide that medical assistance will

14   be furnished with reasonable promptness to all eligible individuals.  42 U.S.C §

15   1396a(a)(8) (hereinafter "Section (a)(8)").

16        12.   For hospitals and certain other institutional providers, states must

17   establish rates through a public process that includes: (a) publication of proposed

18   rates, the methodologies underlying the establishment of such rates, and

19   justifications for the rates; (b) a reasonable opportunity for comment on the

20   proposed rates, methodologies and justifications by providers, beneficiaries and

21   their representatives, and other concerned State residents; and (c) publication of the

22   final rates, the methodologies underlying the establishment of such rates, and

23   justifications for such final rates.  *See* 42 U.S.C. § 1396a(a)(13)(A) (hereinafter

24   "Section 13(A)"); 42 C.F.R. § 447.205.

25        13.   Each  state's Medicaid plan must "provide such methods and

26   procedures . . . relating to the utilization of, and the payment for, care and services

27   available under the plan which may be necessary . . . *to assure that payments are*

28   *consistent with efficiency, economy, and quality of care and are sufficient to enlist*

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  *enough providers so that care and services are available under the plan at least to*

2  *the extent that such care and services are available to the general public in the*

3  *geographic area . . . ."* 42 U.S.C. § 1396a(a)(30)(A) (hereinafter "Section 30(A)")

4  (emphasis added); 42 C.F.R. § 447.204.

5

6  ## CALIFORNIA MEDI-CAL PROGRAM

7  14.    The State of California has elected to participate in the Medicaid

8  program.  California has named its program "Medi-Cal."  *See* Cal. Welf. & Inst.

9  Code §§ 14000 *et seq.*;  22 Cal. Code of Regs. §§ 50000 *et seq.*

10  15.    Medi-Cal healthcare payments are disbursed in two ways.  The first is a

11  "fee for service" process whereby the Department of Health Care Services (the

12  "Department") determines whether the healthcare services were covered and

13  furnished to an eligible beneficiary, and, if so, pays the service providers directly.

14  Alternatively, the Department administers Medi-Cal through various managed care

15  models operated by public and private entities under contract.

16  16.    In 1982, the California Legislature authorized the Department to enter

17  into contracts with selected hospitals to furnish inpatient services in accordance

18  with the terms set forth in those contracts.  The system is known as the selective

19  provider contracting program ("SPCP").  *See* Cal. Welf. and Inst. Code § 14081 *et*

20  *seq.*  The hospitals pursuant to the SPCP are often referred to as "contract hospitals"

21  and generally are paid based on negotiated per diem rates for inpatient services

22  furnished by the hospital.  Hospitals that do not have SPCP contracts are referred to

23  herein as "noncontract hospitals" and are paid directly by the Department from the

24  fee for service program.

25

26  ## MEDI-CAL PAYMENTS TO PROVIDERS

27  17.    Payments from the Medi-Cal fee for service program to providers are

28  governed by various statutes, regulations, the State Plan, and in some instances,

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1    informal handbooks, manuals or bulletins.

2        18.    Specific payments for different providers include the following:

3            a.    **Physician Services:**  Medi-Cal pays physicians for their services

4        pursuant to a physician services fee schedule.  Physician payment rates

5        are set forth in 22 C.C.R. § 51503.

6            b.    **Dental Services:**  Medi-Cal pays dentists for their services

7        pursuant to a dental services fee schedule.  Dental rates are set forth in

8        22 C.C.R. §§ 51506, 51506.1 and 51506.2, but these provisions do not

9        accurately reflect the most recent rate changes.  The current dental rates

10       can be found in the Denti-Cal Schedule of Maximum Allowances in the

11       Denti-Cal Program Provider Handbook and/or the Denti-Cal Provider

12       Bulletin, Volume 24, Number 1.

13           c.    **Pharmacy Services/Drugs:**  Payment rates to pharmacies for

14       drugs are governed by Welfare and Institutions Code § 14105.45.

15       Pharmacy reimbursement for drugs under Medi-Cal is composed of two

16       distinct components:  payment for the ingredient cost of the drug

17       product dispensed, plus a professional dispensing fee.  Some

18       pharmacies also provide certain medical supplies and durable medical

19       equipment ("DME") to Medi-Cal beneficiaries  pursuant to Welfare

20       and Institutions Code section 14105.48 and Title 22, California Code of

21       Regulations, sections 51520 and 51521.

22           d.    **Hospital Services:**

23               i.        Payments for inpatient hospital services to

24       noncontract hospitals are governed by 22 C.C.R. §§ 51545-

25       51556 and Attachment 4.19-A to the State Plan. Hospitals are

26       reimbursed the lowest of  (1) their reasonable costs determined

27       using Medicare reasonable cost principles, (2) an all-inclusive

28       rate per discharge based on cumulative annual adjustments to a

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

2018549.4

1  base rate, (3) the 60th percentile rate per discharge of hospitals in

2  the same peer group, or (4) customary charges.  Hospitals receive

3  interim payments throughout each year which are an estimate of

4  the final reimbursement due the hospital.  Final reimbursement is

5  determined based on a cost report submitted by the hospital after

6  the close of its fiscal year.

7  ii.         Payments for outpatient hospital services are

8  addressed at 22 C.C.R. § 51509.  In general, specific rates are

9  established for the use of hospital facilities and hospitals are paid

10  for other services, such as laboratory or radiology services, at the

11  rates that are payable to non-hospital providers.  Payments

12  provided in certain hospital outpatient departments are governed

13  by Welfare and Institutions Code §14105.24.

14  iii.         Payments for services provided by nursing facilities

15  that are located as a part of hospitals (Distinct Part/Nursing

16  Facilities, or "DP/NFs") are governed by 22 C.C.R. § 51511 and

17  Attachment 4.19-D to the State Plan.  Reimbursement is the

18  lower of (1) the hospital's projected costs of providing DP/NF

19  services or (2) a statewide per diem rate computed by the

20  Department.  Payments for subacute and pediatric subacute

21  services are governed by 22 C.C.R. §§ 51511.5 and 51511.6.  In

22  general, such payments are the lower of (1) the hospital's

23  projected costs of providing subacute services or (2) a statewide

24  per diem rate computed by the Department.

25  iv.         Payments for clinics affiliated with hospitals and

26  other outpatient services are governed by Welfare and

27  Institutions Code § 14105.24, and 22 CCR §§ 51503.1, 51507,

28  51507.1, 51507.2, and 51509.1.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX:  (310) 551-8181

e.    **Adult Day Health Care Services:**  Medi-Cal pays ADHCs $76.22 as a bundled per diem payment for services.  22 C.C.R. § 54501 does not reflect the current reimbursement rate for ADHCs.  Reimbursement rates for ADHC services may be found in the Inpatient/Outpatient Manual, Part 2.

Plaintiffs maintain the right to supplement this description of and authority cited for reimbursement rates.

### THE AB 5 RATE REDUCTION

19.    On February 16, 2008, the California Legislature enacted Assembly Bill X3 5 ("AB 5") in special session.  Section 14 of said Act added Section 14105.19 to the Welfare and Institutions Code.  Pursuant to paragraph (b)(1) of Welfare and Institutions Code § 14105.19, payments under the Medi-Cal fee for service program for physicians, dentists, pharmacies, ADHCs, clinics, health systems and other providers were to be reduced by ten percent for services provided on or after July 1, 2008.  The rate reduction will also impact inpatient services furnished by noncontract hospitals, outpatient services furnished by all hospitals, subacute and DP/NF services.

20.    The Legislature also enacted Welfare and Institutions Code § 14166.245, which reduced payments to noncontract hospitals for inpatient services furnished on or after July 1, 2008, by ten percent.  This is accomplished by reducing interim payments for inpatient hospital services furnished by noncontract hospitals on or after July 1, 2008, by ten percent, and by limiting the final reimbursement for each patient day of inpatient hospital services furnished on or after July 1, 2008, to 90% of the hospital's audited allowable cost per day.

21.    The rate and payment reductions set forth in Welfare and Institutions Code sections 14105.19(b)(1) and 14166.245 as enacted by AB 5 are referred to herein as "the AB 5 Rate Reductions."

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

2018549.4

22.     On April 22, 2008, Independent Living Center of Southern California ("ILCSC") and other Plaintiffs filed a lawsuit in Los Angeles Superior Court against Sandra Shewry to challenge the AB 5 Rate Reduction.  The essence of the complaint was that the AB 5 Rate Reduction violated Section 30(A) of the federal Medicaid Act.  The State removed this action to federal court.

23.     On June 25, 2008, Judge Cristina Snyder of the Central District denied ILCSC a preliminary injunction on the grounds that Plaintiffs had not established a likelihood on its legal claims.  The Plaintiffs immediately appealed the denial of the preliminary injunction to the Ninth Circuit Court of Appeals.

24.     By order dated July 16, 2008, the Ninth Circuit reversed the Court's denial of the injunction, holding that the Supremacy Clause does provide a vehicle for prospective enforcement of federal laws such as Section 30(A).  On September 17, 2008, the Ninth Circuit issued its Opinion on its July 16, 2008 Order.  *Indep. Living Ctr. Of S. Cal. v. Shewry* (9th Cir. 2008) 543 F.3d 1050.

25.     Upon remand, the district court on August 18, 2008, issued a preliminary injunction ordering the State to refrain from implementing the AB 5 Rate Reduction for services.  *Indep. Living Ctr. of S. Cal. v. Shewry* (C.D.Cal. 2008) 2008 WL 3891211.  The district court found that the petitioners in that case had established a likelihood of success on the merits because the Department did not offer sufficient evidence that it "made the [inquiries required by Section 30(A)] in deciding to enact the ten percent reduction."  The district further determined that the AB 5 Rate Reduction as applied to pharmacies, physicians, dentists and ADHCs had a likelihood of irreparably harming Medi-Cal beneficiaries by limiting access to the healthcare services provided by these classes of providers.

26.     On September 15, 2008, the court clarified its injunction to specify that it applied to services provided by pharmacies, physicians, dentists and adult day health care services, but not hospitals.

27.     The preliminary injunction is currently on appeal to the Ninth Circuit.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX:  (310) 551-8181

2018549.4

1    A hearing before the Ninth Circuit is set for February 18, 2009.

## THE AB 1183 RATE REDUCTIONS

28.    On September 18, 2008, after a protracted budget stalemate, Governor Schwarzenegger signed Assembly Bill 1183 ("AB 1183"), the budget trailer bill for fiscal year 2008-09.  A true and correct copy of AB 1183 is attached hereto and incorporated herein as Exhibit A.  AB 1183 amended Welfare and Institutions Code section 14105.19, making most aspects of the AB 5 Rate Reduction effective only through February 29, 2009.  AB 1183 made the AB 5 Rate Reduction of Welfare and Institutions Code section 14105.19 applicable to small and rural hospitals until October 31, 2008.

29.    AB 1183 implemented the following modified rate reductions, subject to certain exemptions, effective March 1, 2009, by implementing Welfare and Institutions Code section 14105.191:

a.    A five percent rate reduction for Medi-Cal fee-for-services benefits paid to certain intermediate care facilities, skilled nursing facilities that are distinct parts of general acute care hospitals, rural swing-bed facilities, subacute care units that are, or are parts of, distinct parts of general acute care hospitals, pediatric subacute care units that are, or are parts of, distinct parts of general acute care hospitals, and adult day health care centers.

b.    A five percent rate reduction to payments to pharmacies and adult day health care.

c.    A one percent rate reduction for all other Medi-Cal fee-for-service benefits.

30.    AB 1183 also imposed additional reductions on reimbursement from the Medi-Cal program to noncontract hospitals for inpatient hospital services by amending Welfare and Institutions Code section 14166.245 to result in the following

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

2018549.4

payment rates, effective March 1, 2009:

    a.    For most noncontract hospitals, interim payments for inpatient hospital services are the lesser of 90% of the interim rate or 95% of an "average regional per diem contract rate."  Final reimbursement is limited to the lesser of 90% of the hospital's audited allowable cost per day or 95% of an "average regional per diem contract rate."

    b.    "Small and rural hospitals" are exempted from these limitations.

    c.    Certain hospitals in open health facility planning areas are subject only to the 10% rate reductions and not the "average regional per diem contract rate" limitations.

31.    The reductions enacted by Welfare and Institutions Code sections 14105.191 and 14166.245 enacted by AB 1183 are hereinafter referred to as the "AB 1183 Rate Reductions."  In this lawsuit, Plaintiffs contest the AB 1183 Rate Reductions insofar as they impact Medi-Cal payments directly from the Department to providers.  Plaintiffs reserve any rights they may have to contest payments from Medi-Cal managed care plans to providers.

32.    Plaintiffs are informed and believe and thereon allege that, like the Director's failures enjoined in *ILCSC v. Shewry*, prior to enacting or implementing AB 1183, no studies or other analyses were conducted by the Legislature or by the Director to determine the impact the AB 1183 Rate Reductions would have on the ability of Medi-Cal beneficiaries to have access to health care services to the same extent as the general public.  Plaintiffs are informed and believe and further allege that the Legislature has long been aware that prior to and as of the date of enactment of AB 1183, Medi-Cal beneficiaries did not have adequate access to health care services.

33.    Plaintiffs are informed and believe and thereon allege that, prior to enacting or implementing this statute, no studies or other analyses were conducted by the Legislature or by the Director to determine whether the Medi-Cal payment

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1    rates resulting from the AB 1183 Rate Reductions would be consistent with

2    efficiency, economy and quality of care or with the costs of providing the services

3    affected by the rate reduction.

4

5    **THE AB 1183 RATE REDUCTIONS WILL EXACERBATE THE ACCESS**

6    **PROBLEMS ALREADY CAUSED BY INADEQUATE MEDI-CAL RATES**

7         34.    As recognized in the district court's opinion in *ILCSC v. Shewry*, the

8    implementation of AB 1183 Rate Reductions, like the AB 5 Rate Reduction, will

9    irreparably harm Medi-Cal beneficiaries by limiting their access to healthcare

10   services.

11        35.    The Legislative Analyst's Office ("LAO") in 2001 acknowledged that

12   "[d]espite state and federal requirements, [the Department] has not conducted

13   annual rate reviews or made periodic adjustments to Medi-Cal rates to ensure

14   reasonable access to health care services."  The LAO concluded that "there is not a

15   rational basis for Medi-Cal rates."  The access problems extant in 2001 have only

16   worsened with time.

17        36.    The Legislature's passage of the AB 1183 Rate Reductions will cause

18   numerous providers to further reduce the services they currently provide to Medi-

19   Cal beneficiaries or cease caring for Medi-Cal beneficiaries at all.  The Director

20   again attempts to unlawfully impair Medi-Cal beneficiaries' access to healthcare

21   services, in a manner that will cause a ripple effect across the health care landscape.

22

23                        **DEFENDANT'S VIOLATIONS OF LAW**

24        37.    Defendant has violated, and continues to violate federal Medicaid

25   statutes, federal Medicaid regulations and the State Plan by failing to analyze Medi-

26   Cal reimbursement rates for the services affected by the AB 1183 Rate Reductions

27   to ensure that those rates are sufficient to ensure that beneficiaries of the Medi-Cal

28   program have access to services to the same extent as the general public.  The

1   Medi-Cal rates currently paid for physician, hospital, dentist, ADHC and pharmacy
2   services do not afford Medi-Cal beneficiaries adequate access to services.  The AB
3   1183 Rate Reductions will only exacerbate this already severe access problem.

4       38.   <u>Violation of Federal Statute:</u> The AB 1183 Rate Reductions are invalid
5   and may not lawfully be implemented because they violate federal Medicaid law,
6   and are therefore preempted by the Supremacy Clause, because:

7       a.   The AB 1183 Rate Reductions violate Section 30(A) because
8       i.   The rates resulting from the AB 1183 Rate
9   Reductions are not consistent with efficiency, economy, and
10   quality of care, and are not sufficient to enlist enough providers
11   so that care and services under the Medi-Cal program are
12   available at least to the extent that such care and services are
13   available to the general population;

14       ii.   Neither the Director nor the Legislature considered
15   the factors of efficiency, economy, quality of care, and access to
16   services prior to enacting the AB 1183 Rate Reductions;

17       iii.   Neither the Director nor the Legislature
18   demonstrated a reasonable connection between the AB 1183
19   Rate Reductions and the efficient and economical provision of
20   quality care, or ensuring access to services, prior to enacting the
21   AB 1183 Rate Reductions; and/or

22       iv.   Neither the Legislature nor the Director considered
23   the costs of providing quality care or demonstrated a reasonable
24   connection between Medi-Cal rates as affected by the AB 1183
25   Rate Reductions and provider costs.

26       b.   The AB 1183 Rate Reductions violate Section (a)(8) because
27   they fail to ensure that Medi-Cal beneficiaries may access care in
28   a prompt manner; and/or

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

c.   The AB 1183 Rate Reductions violate Section 13(A) as to hospital services (including subacute and DP/NF services) because they were not adopted through a public process as required by this provision.

39.   <u>Violation of Federal Regulations:</u>  The AB 1183 Rate Reductions are invalid and may not lawfully be implemented because they violate federal Medicaid regulations, and are therefore preempted by the Supremacy Clause, because:

a.   The AB 1183 Rate Reductions violate 42 C.F.R. § 447.204 by failing to ensure that "payments [are] sufficient to enlist enough providers so that services under the [State Plan] are available to recipients at least to the extent that those services are available to the general population" and/or

b.   The AB 1183 Rate Reductions violate 42 C.F.R. § 447.205 as to hospital services (including DP/NF services) because they were not adopted through a public process as required by this provision.

40.   <u>Violation of the State Plan:</u>  As mentioned above, the Director must follow the State Plan as a Federal requirement for participation in the Medicaid program.  The AB 1183 Rate Reductions are invalid and may not lawfully be implemented as they violate the State Plan, and accordingly, Federal law, and are therefore preempted by the Supremacy Clause, because:

a.   Neither the Director nor the Legislature ensured that Medi-Cal payment rates incorporating the AB 1183 Rate Reductions are sufficient to establish equal access to services for Medi-Cal beneficiaries;

b.   With respect to non-institutional services, neither the Director nor the Legislature (1) Developed an evidentiary base or rate study resulting in the determination of proposed rates incorporating the AB 1183 Rate Reductions; (2) Presented the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2018549.4

proposed rates incorporating the AB 1183 Rate Reductions at a public hearing to gather public input; (3) Determined the final rates based on the evidentiary base including the pertinent public input; or (4) established the payment rates incorporating the AB 1183 Rate Reductions through adoption of regulations specifying such rates; and/or

c.  With respect to non-institutional services, the rate adjustments made by the AB 1183 Rate Reductions otherwise fail to meet the requirements of 42 C.F.R. Part 447.

41.  <u>No State Plan Amendment:</u> The AB 1183 Rate Reductions are invalid and may not lawfully be implemented because they are inconsistent with and violates the State Plan, including, but not limited to, Attachment 4.19-A of the State Plan as to hospital inpatient services and Attachment 4.19-D as to DP/NF services. The AB 1183 Rate Reductions are therefore preempted by the Supremacy Clause. The Director may not lawfully implement the AB 1183 Rate Reductions unless and until it obtains federal approval of the necessary amendments to the State Plan to the federal government.  Plaintiffs are informed and believe, and thereon allege, that the Director has not obtained federal approval for the AB 1183 Rate Reductions.

## THE PARTIES

42.  Defendant DAVID MAXWELL-JOLLY is the Director of the Department of Health Care Services and, as such, has the responsibility to administer the Medi-Cal program consistent with the Medicaid Act.  The Director is sued in his official capacity.  The Department is the single state agency charged with the administration of California's Medicaid program, known as Medi-Cal.  *See* California Welf. & Inst. Code §§ 14000 *et seq.*  The Director has an office in the County of Los Angeles.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

2018549.4

43.    Plaintiff CALIFORNIA PHARMACISTS ASSOCIATION ("CPhA") represents more than 5,000 pharmacists in California.  CPhA is incorporated in the State of California with its principal office in Sacramento, California.  It is the largest state professional association of pharmacists in the United States.  Many of CPhA's members own or operate pharmacies in the State of California, many of which are providers under California's Medi-Cal program. The mission of CPhA is to represent pharmacists in all practice settings in the State, and to advocate the role of pharmacy as an essential venue of health care for patients.  CPhA brings this action on its own behalf and in its representative capacity on behalf of its members who will be directly and adversely affected by the threatened rate reduction, and on behalf of the Medi-Cal patients served by its members.

44.    Plaintiff CALIFORNIA MEDICAL ASSOCIATION ("CMA") is a nonprofit,  incorporated professional association of more than 30,000 physicians practicing in the State of California, with its principal office in Sacramento, California.  CMA's membership includes California physicians who are engaged in the private practice of medicine, in all specialties.  CMA's primary purposes are "to promote the science and art of medicine, the care and well-being of patients, the protection of the public health, and the betterment of the medical profession." CMA brings this action on its own behalf and in its representative capacity on behalf of its members, many of whom are providers under California's Medi-Cal program and will be directly and adversely affected by the threatened rate reduction, and on behalf of its members' patients.

45.    Plaintiff CALIFORNIA DENTAL ASSOCIATION is a nonprofit, professional association representing more than 22,000 dentists throughout the State of California.  This number reflects 72 percent of all California licensed dentists. Founded in 1870,  CDA is the largest constituent member of the American Dental Association.  CDA is incorporated in the State of California with its principal office in Sacramento, California.  Through public policy, advocacy, education and other

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX:  (310) 551-8181

2018549.4

1   means, CDA has promoted the health of the public, the profession and the

2   individuals it serves for over a century. CDA brings this action on its own behalf

3   and in its representative capacity on behalf of its members, many of whom are

4   providers under California's Medi-Cal program and will be directly and adversely

5   affected by the threatened rate reduction, and on behalf of its members' patients.

6        46.   Plaintiff CALIFORNIA HOSPITAL ASSOCIATION ("CHA") is a

7   trade association representing the interests of hospitals in the State of California.

8   CHA is incorporated in the State of California with its principal office in

9   Sacramento, California. CHA's member hospitals provide both inpatient and

10  outpatient hospital services. In addition, many of CHA's members operate special

11  units, such as emergency departments or distinct part nursing units ("DP/NFs") that

12  provide skilled nursing care. CHA represents nearly 450 hospitals and health

13  systems throughout California, including general acute care hospitals, children's

14  hospitals, rural hospitals, psychiatric hospitals, academic medical centers, county

15  hospitals, investor-owned hospitals, and multi-hospital health systems. These

16  hospitals furnish vital health care services to millions of our states' citizens CHA

17  also represents more than 150 Executive, Associate and Personal members. CHA

18  brings this action on its own behalf and in its representative capacity on behalf of its

19  members, many of which are providers under California's Medi-Cal program and

20  will be directly and adversely affected by the threatened rate reduction, and on

21  behalf of its members' patients.

22       47.   Plaintiff CALIFORNIA ASSOCIATION FOR ADULT DAY

23  SERVICES ("CAADS") is a 501(c)(6) nonprofit statewide association to support

24  the development of adult day services as an alternative to institutional care.

25  CAADS is incorporated in the State of California with its principal office in

26  Sacramento, California. Established in 1977, CAADS is the largest state

27  association for adult day services in the nation, representing more than 133 licensed

28  ADHC providers. CAADS is a membership-based association supported by dues,

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

2018549.4

grants and educational activities. CAADS members include providers, case managers, consultants, vendors and others interested in supporting the mission of the organization. The vast majority of the provider members own and/or operate ADHCs, which are licensed pursuant to the California Adult Day Health Care Act, Health and Safety Code § 1570, *et seq,* and are a benefit under the Medi-Cal Program pursuant to the Adult Day Health Medi-Cal Law, Welfare and Institutions Code § 14520, *et seq.* ADHCs provide intensive day services through a multi-disciplinary team of health and social services professionals to frail elderly and disabled persons, in order to maintain their ability to reside in the community. Without such ADHC services, many of the ADHC participants would, within a short period of time, have to rely on emergency department visits or be prematurely placed in a nursing facility. CAADS brings this action on its own behalf and in its representative capacity on behalf of its members, many of which are providers under California's Medi-Cal program and will be directly and adversely affected by the threatened rate reduction, and on behalf of its members' patients.

48.   Plaintiffs CPhA, CMA, CDA, CHA, and CAADS are hereinafter referred to collectively as Associational Plaintiffs.

49.   Plaintiff Marin Apothecary, Inc. d/b/a Ross Valley Pharmacy ("Ross Valley") is a pharmacy licensed in the State of California. Ross Valley's business address is 2 Bonaire Road, #130, Larkspur, California. As part of its pharmacy practice and business, Ross Valley provides drug products and services to Medi-Cal patients. Ross Valley's current practice consists of approximately five percent cash patients, 80 percent private insurance (including Medicare Part D plans), and 15 percent medical participation. The services provided by Ross Valley include dispensing of prescription and OTC medications and devices, process of TARS, delivery, immunizations and consulting regarding the proper use of prescription and OTC drugs, vitamins, herbals, and medical devices.

50.   Plaintiff South Sacramento Pharmacy ("South Sacramento") is a

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1  pharmacy licensed in the State of California.  South Sacramento's business address

2  is 5385 Franklin Boulevard, Suite 1, Sacramento, California 95820.  As part of its

3  pharmacy practice and business, South Sacramento provides drug products and

4  services to Medi-Cal patients.  Its current practice consists of approximately six

5  percent cash patients, 64 percent private insurance (including Medicare Part D

6  plans), and 30 percent Medi-Cal participation.  South Sacramento provides services

7  including dispensing of prescription and OTC medications and devices, delivery

8  services, TARS processing, consulting regarding the proper use of prescription OTC

9  drugs, and counseling in non-English languages such as Spanish.

10       51.    Plaintiff Farmacia Remedios, Inc. is a pharmacy licensed in the State of

11  California.  As part of its pharmacy practice and business, Farmacia Remedios, Inc.

12  provides drug products and services to Medi-Cal patients.  Its current practice

13  consists of approximately 10 percent cash patients, 60 percent private insurance

14  (including Medicare Part D plans), and 30 percent Medi-Cal participation

15  (100 percent fee for service and 0 percent Medi-Cal managed care.  The services

16  provided by Farmacia Remedios, Inc., include dispensing of prescription and over

17  the counter ("OTC") medications and devices, Treatment Authorization Requests

18  ("TARS), Spanish language, high services, extra prescription consultation,

19  medication compliance technologies (Medisets) and consulting regarding the proper

20  use of prescription and OTC drugs, vitamins, and herbals.

21       52.    Plaintiff Acacia Adult Day Services ("AADS") is a non-profit

22  organization incorporated in the State of California.  AADS is licensed by the State

23  of California to operate an ADHC located at 11391 Acacia Parkway, Garden Grove,

24  California.  ADHCs provide intensive day services through a multi-disciplinary

25  team of health and social services professionals to frail elderly and disabled persons,

26  in order to maintain their ability to reside in the community.  In operation for almost

27  29 years, AADS is viewed as a model program for Alzheimer's care and services for

28  frail elders and disabled adults.  AADS currently serves 163 participants, all of

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  whom have complex, fragile medical conditions.  The majority of these participants

2  are insured by Medi-Cal, including Medi-Cal fee-for-service.  Since AADS is

3  dependent on Medi-Cal reimbursement for the majority of our participants, any

4  change to the reimbursement or cash flow has an immediate impact on its financial

5  status.  As a result of the AB 1183 Rate Reductions, AADS will lose additional

6  Medi-Cal funding.

7          53.    Plaintiff Sharp Memorial Hospital ("SMH") is a California non-profit

8  public benefit corporation.  SMH operates five hospital facilities, including SMH,

9  Sharp Cabrillo Hospital, Sharp Mary Birch Hospital for Women, and Sharp Mesa

10 Vista Hospital, all in San Diego, CA.  SMH, Sharp Cabrillo Hospital, Sharp Mary

11 Birch Hospital for Women and Sharp Mesa Vista Hospital all participate in the

12 Medi-Cal program and are reimbursed directly by the Medi-Cal program for

13 services provided to Medi-Cal beneficiaries.  Sharp Cabrillo Hospital provides

14 distinct part nursing services.  Accordingly, SMH is directly impacted by the AB

15 1183 Rate Reductions.

16         54.    Plaintiff Sharp Chula Vista Medical Center is a California nonprofit

17 public benefit corporation.  Sharp Chula Vista Medical Center operates a hospital

18 named Sharp Chula Vista Medical Center in Chula Vista, CA.  Sharp Chula Vista

19 Medical Center also operates the adjacent Birch-Patrick Skilled Nursing Facility,

20 which provides distinct part nursing services.  Sharp Chula Vista Medical Center

21 participates in the Medi-Cal program and is reimbursed directly by the Medi-Cal

22 program for services provided to Medi-Cal beneficiaries.  Accordingly, Sharp Chula

23 Vista Medical Center is directly impacted by the AB 1183 Rate Reductions.

24         55.    Plaintiff Grossmont Hospital Corporation is a California nonprofit

25 public benefit corporation.  Grossmont Hospital Corporation operates under a single

26 license a hospital named Grossmont Hospital and the Briar Patch Skilled Nursing

27 Facility, which provides distinct part nursing services, in La Mesa, CA.  Grossmont

28 Hospital Corporation participates in the Medi-Cal program and is reimbursed

1   directly by the Medi-Cal program for services provided to Medi-Cal beneficiaries.

2   Accordingly, Grossmont Hospital Corporation is directly impacted by the AB 1183

3   Rate Reductions.

4        56.    Plaintiff Sharp Coronado Hospital And Healthcare Center  ("SCHHC")

5   is a California nonprofit public benefit corporation.  SCHHC operates under one

6   license a hospital named Sharp Coronado Hospital and Healthcare Center and the

7   Villa Coronado Skilled Nursing Facility, which provides distinct part nursing

8   services and subacute services, in Coronado, CA.  SCHHC participates in the Medi-

9   Cal program and is reimbursed directly by the Medi-Cal program for services

10   provided to Medi-Cal beneficiaries.  Accordingly, SCHHC is directly impacted by

11   the AB 1183 Rate Reductions.

12        57.    Plaintiffs SMH, Sharp Chula Vista Medical Center, Grossmont

13   Hospital Corporation and SCHHC provide hospital outpatient services that are

14   subject to reduction by the AB 1183 Rate Reductions.

15        58.    Plaintiffs Ross Valley Pharmacy, Zweber Apothecary, South

16   Sacramento, Farmacia Remedios, Inc., AADS, SMH, Sharp Chula Vista Medical

17   Center, Grossmont Hospital Corporation and SCHHC are hereinafter referred to

18   collectively as Provider Plaintiffs.

19        59.    Plaintiff Fey Garcia is an 85 year old woman who lives alone in San

20   Francisco.  Ms. Garcia is a Medi-Cal beneficiary and attends North & South of

21   Market Adult Day Health, an ADHC, five days per week.  Ms. Garcia has very poor

22   eyesight due to macular degeneration, being blind in the right eye and having badly

23   blurred vision in the left eye.  She suffers from degenerative joint disease, a weak

24   right knee, severe arthritis in her shoulder, high blood pressure and high cholesterol.

25   Ms. Garcia walks with a cane and benefits from the physical therapy she receives at

26   the ADHC.  She also has a history of major depression and benefits from the

27   support, counseling and social contact she receives.

28        60.    Plaintiff Charles Gallagher is a 54 year old man who lives in Napa,

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

California and has been attending Adult Day Services of Napa Valley ("ADSNV") since 1998.  When Mr. Gallagher was 36, he had an aneurism, which permanently damaged his brain and left him severely disabled.   He was in a wheelchair for several years, but eventually learned to walk with a walker or cane with the help of ADSNV.  He has a history of seizures and has a shunt in his brain to drain off excess fluid.  He also has a history of hypertension and depression.  Mr. Gallagher lives alone and is dependent for assistance on a part-time caregiver at home and on ADSNV.  He has been able to maintain some independence due as a result of the physical therapy and the nursing monitoring he receives at ADSNV, which helps him manage the 15 medications he currently takes and monitors his medical condition.  Without adult day health care services, it is likely that Mr. Gallagher could not longer live independently.

## ASSOCIATIONAL PLAINTIFFS' STANDING

61.    Many of the members of Associational Plaintiffs are Medi-Cal providers.  These Medi-Cal providers will suffer a concrete economic injury in the form of reduced payment for services by the unlawful implementation of the AB 1183 Rate Reductions.

62.    Medi-Cal providers are in a unique position to advance the interests of Medi-Cal beneficiaries.  The members of Associational Plaintiffs which provide services to Medi-Cal beneficiaries have an extremely close relationship with their Medi-Cal beneficiary patients who seek that care.  A Medi-Cal beneficiary cannot secure medical services without his/her health care providers, and without reimbursement by Medi-Cal for those services. Medi-Cal providers are better positioned and informed as to the impact of a reimbursement rate cut on the services they intend to provide.

63.    Furthermore, Medi-Cal beneficiaries face economic hindrances to their ability to assert their own rights in this case.  To qualify for Medi-Cal, an individual

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

2018549.4

1    must demonstrate financial need for medical assistance from the State.  In light of

2    their finances and the cost of litigation, Medi-Cal beneficiaries may not be able to

3    effectively protect their interests.

4         64.    Associational Plaintiffs, as associations representing the interests of

5    doctors, dentists, pharmacies, hospitals and ADHCs that participate in the Medi-Cal

6    program and the Medi-Cal beneficiaries served by these providers, and as parties

7    seeking to compel the Director to comply with his public duties as defined by

8    federal law, have a right and an enforceable interest to maintain this action to: (1)

9    enjoin Defendant's continuing violation of federal Medicaid law; and (2) compel

10   Defendant to comply with the provisions of the applicable federal laws.

11        65.    Moreover, Associational Plaintiffs have a right and an enforceable

12   interest to maintain this action against the Director under the Supremacy Clause of

13   the United States Constitution and under the Civil Rights Act, 42 U.S.C. § 1983, to

14   enjoin the Director's continuing violation of the federal Medicaid law and to compel

15   the Director to comply with the provisions of the applicable federal Medicaid law.

16        66.    Under 28 U.S.C. section 2201, Associational Plaintiffs are entitled to a

17   declaration of their rights, their members' rights, and/or their members' patients'

18   rights under federal Medicaid law.

19

20                        **PROVIDER PLAINTIFFS STANDING**

21        67.    As providers in the Medi-Cal program, the Provider Plaintiffs will

22   suffer a concrete economic injury in the form of reduced payment for services if the

23   AB 1183 Rate Reductions are implemented.

24        68.    Provider Plaintiffs have a sufficiently close relationship with their

25   patients who are Medi-Cal beneficiaries to have third-party standing on behalf of

26   their beneficiary plaintiffs. There are hindrances or genuine obstacles to Medi-Cal

27   beneficiaries' ability to assert their own interests.  Here, the obstacle Medi-Cal

28   beneficiaries face is a lack of information about the effect of Medi-Cal

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1  reimbursement rates on providers in light of providers' costs and the further effect of

2  a rate cut on the provision of services to Medi-Cal beneficiaries.   Providers are the

3  ones who know the relationship of reimbursement to their cost of services.

4        69.    Moreover, Provider Plaintiffs have a right and an enforceable interest to

5  maintain this action against the Director under the Supremacy Clause of the United

6  States Constitution and under the Civil Rights Act, 42 U.S.C. § 1983, to enjoin the

7  Director's continuing violation of the federal Medicaid law and to compel the

8  Director to comply with the provisions of the applicable federal Medicaid law.

9        70.    Under 28 U.S.C. section 2201, Provider Plaintiffs are entitled to a

10  declaration of their rights, their members' rights, and/or their members' patients'

11  rights under federal Medicaid law.

12

13  ### FIRST CAUSE OF ACTION

14  **(VIOLATION OF 42 U.S.C. § 1396a(a)(30)(A)/SUPREMACY CLAUSE)**

15        71.    Plaintiffs hereby incorporate by reference paragraphs 1 through 68,

16  inclusive, as though fully set forth herein.

17        72.    The AB 1183 Rate Reductions violate Section 30(A) of the Medicaid

18  Act because:

19           a.    The rates resulting from the AB 1183 Rate Reductions are not

20           consistent with efficiency, economy, and quality of care, and are not

21           sufficient to enlist enough providers so that care and services under the

22           Medi-Cal program are available at least to the extent that such care and

23           services are available to the general population;

24           b.    Neither the Director nor the Legislature considered the factors of

25           efficiency, economy, quality of care, and access to services prior to

26           enacting the AB 1183 Rate Reductions;

27           c.    Neither the Director nor the Legislature demonstrated a

28           reasonable connection between the AB 1183 Rate Reductions and the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

2018549.4

provision of quality care in an efficient and economic manner, or ensuring access to services, prior to enacting the AB 1183 Rate Reductions; and

d.      Neither the Legislature nor the Director considered the costs of providing quality care or demonstrated a reasonable connection between Medi-Cal rates as affected by the AB 1183 Rate Reductions and provider costs.

73.      The AB 1183 Rate Reductions are thus preempted by the Supremacy Clause of the United States Constitution, art. IV, because the mandated across-the-board rate reductions, enacted solely for budgetary reasons in disregard of the Section 30(A) statutory factors, stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in the enactment of said Section.

## SECOND CAUSE OF ACTION
### (VIOLATION OF 42 U.S.C. § 1396a(a)(8)
### SUPREMACY CLAUSE/42 U.S.C. § 1983)

74.      Plaintiffs hereby incorporate by reference paragraphs 1 through 41, inclusive, as though fully set forth herein.

75.      The AB 1183 Rate Reductions violate Section (a)(8) because they fail to ensure that Medi-Cal beneficiaries may access care in a prompt manner.

76.      The AB 1183 Rate Reductions are thus preempted by the Supremacy Clause of the United States Constitution, art. IV.

## THIRD CAUSE OF ACTION
### (VIOLATION OF 42 U.S.C. § 1396a(a)(13)(A)
### SUPREMACY CLAUSE/42 U.S.C. § 1983)

77.      Plaintiffs hereby incorporate by reference paragraphs 1 through 74, inclusive, as though fully set forth herein.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

2018549.4

78.     The AB 1183 Rate Reductions violate Section 13(A) as to hospital services (including DP/NF and subacute services) because they were not adopted through a public process as required by this provision.

79.     The AB 1183 Rate Reductions are thus preempted by the Supremacy Clause of the United States Constitution, art. IV.

### FOURTH CAUSE OF ACTION

### (VIOLATION OF 42 C.F.R. § 447.204/SUPREMACY CLAUSE)

80.     Plaintiffs hereby incorporate by reference paragraphs 1 through 77, inclusive, as though fully set forth herein.

81.     The AB 1183 Rate Reductions are invalid and may not lawfully be implemented because they violate 42 C.F.R. § 447.204, and are therefore preempted by the Supremacy Clause, by failing to ensure that "payments [are] sufficient to enlist enough providers so that services under the [State Plan] are available to recipients at least to the extent that those services are available to the general population."

### FIFTH CAUSE OF ACTION

### (VIOLATION OF 42 C.F.R. § 447.205/SUPREMACY CLAUSE)

82.     Plaintiffs hereby incorporate by reference paragraphs 1 through 79, inclusive, as though fully set forth herein.

83.     The AB 1183 Rate Reductions are invalid and may not lawfully be implemented because they violate 42 C.F.R. § 447.205 as to hospital services (including DP/NF services), and are therefore preempted by the Supremacy Clause, because they were not adopted through a public process as required by this provision.

/ / /

/ / /

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2018549.4

## SIXTH CAUSE OF ACTION

### (VIOLATION OF STATE PLAN/ FAILURE TO AMEND STATE PLAN/SUPREMACY CLAUSE)

84.     Plaintiffs hereby incorporate by reference paragraphs 1 through 81, inclusive, as though fully set forth herein.

85.     The AB 1183 Rate Reductions are invalid and may not lawfully be implemented as they violate the State Plan, including, but not limited to, Attachment 4.19-A of the State Plan as to hospital inpatient services and Attachment 4.19-D as to DP/NF services, and accordingly, Federal law, and are therefore preempted by the Supremacy Clause, because:

a.     Neither the Director nor the Legislature ensured that Medi-Cal payment rates incorporating the AB 1183 Rate Reductions are sufficient to establish equal access to services for Medi-Cal beneficiaries;

b.     With respect to non-institutional services, neither the Director nor the Legislature (1) Developed an evidentiary base or rate study resulting in the determination of proposed rates incorporating the AB 1183 Rate Reductions; (2) Presented the proposed rates incorporating the AB 1183 Rate Reductions at a public hearing to gather public input; (3) Determined the final rates based on the evidentiary base including the pertinent public input; or (4) established the payment rates incorporating the AB 1183 Rate Reductions through adoption of regulations specifying such rates; and/or

c.     With respect to non-institutional services, the rate adjustments made by the AB 1183 Rate Reductions otherwise fail to meet the requirements of 42 C.F.R. Part 447.

86.     The Director may not lawfully implement the AB 1183 Rate Reductions unless and until it obtains federal approval of the necessary amendments

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2018549.4

1  to the State Plan to the federal government.

2

3                          **SEVENTH CAUSE OF ACTION**

4                               **(DECLARATORY RELIEF)**

5         87.    Plaintiffs hereby incorporate by reference paragraphs 1 through 84,

6  inclusive, as though fully set forth herein.

7         88.    An actual and justiciable controversy exists between Plaintiffs and

8  Director regarding the validity of the AB 1183 Rate Reductions that are scheduled

9  to take effect on March 1, 2009.  Plaintiffs contend that the rate reduction is invalid

10 and unlawful in violation of federal statute, federal regulations, and the State Plan,

11 while the Director contends that the rate reductions are valid in all respects.

12        89.    Accordingly, pursuant to 28 U.S.C. § 2201, Plaintiffs request this

13 Court to declare that the rate reductions are invalid and unlawful.

14        90.    No administrative appeal process or other administrative remedy is

15 available to Plaintiffs to challenge the AB 1183 Rate Reductions.

16        91.    All of the said injuries are great, immediate, and irreparable, for which

17 damages at law are inadequate, and for which plaintiffs have no plain, adequate or

18 speedy relief at law or otherwise.

19

20        **WHEREFORE,** Plaintiffs pray for judgment as follows:

21        1.    For an Order declaring that the AB 1183 Rate Reductions violate 42

22 U.S.C. sections 1396a(a)(30)(A), 1396a(a)(8) and 1396a(a)(13), 42 C.F.R. sections

23 447.204 and 447.205, and the California State Plan and are thus invalid and

24 preempted by the Supremacy Clause of the United States Constitution, art. IV;

25        2.    For an Order declaring that the AB 1183 Rate Reductions represent a

26 *de facto* amendment to the State Plan and therefore said rate reductions cannot be

27 imposed without federal approval;

28        3.    For an Order declaring that, when setting Medi-Cal rates in the future,

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

the Department must consider whether the rates have a reasonable relationship to the costs of providing services to Medi-Cal beneficiaries and are sufficient to ensure equal access to services for Medi-Cal beneficiaries and, to the extent rates deviate from such costs or are insufficient to ensure equal access, may not alter nor adjust the rates;

4. For an Order preliminarily and permanently enjoining Director from effectuating the AB 1183 Rate Reductions or reducing to any degree the Medi-Cal rates for health care services that are affected by Welfare and Institutions Code §§ 14105.191 and 14166.245; and

5. For the costs of suit, including reasonable attorneys' fees incurred by Plaintiffs; and

6. Such other and further relief as may be just and proper.

DATED: January 29, 2009          HOOPER, LUNDY & BOOKMAN, INC.

By: _____
          LLOYD A. BOOKMAN
Attorneys for Plaintiffs

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV09- 722 CAS (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| CALIFORNIA PHARMACISTS ASSOCIATION; CALIFORNIA MEDICAL ASSOCIATION; CALIFORNIA DENTAL ASSOCIATION; CALIFORNIA HOSPITAL ASSOCIATION; CALIFORNIA ASSOCIATION FOR ADULT DAY SERVICES; MARIN APOTHECARY, INC. d/b/a ROSS VALLEY PHARMACY; SOUTH SACRAMENTO PHARMACY; FARMACIA REMEDIOS, INC.; ACACIA ADULT DAY SERVICES; SHARP MEMORIAL HOSPITAL; GROSSMONT HOSPITAL CORPORATION; SHARP CHULA VISTA MEDICAL CENTER; SHARP CORONADO HOSPITAL AND HEALTHCARE CENTER; FEY GARCIA and CHARLES GALLAGHER; | DAVID MAXWELL-JOLLY, DIRECTOR OF THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES; |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Craig J. Cannizzo, Felicia Y Sze and Michael A. Dubin HOOPER, LUNDY AND BOOKMAN, INC., 575 Market Street, Ste. 2300, San Francisco, CA 94105 (415) 875-8500 Byron J. Gross, Lloyd A. Bookman and Jordan B. Keville HOOPER, LUNDY AND BOOKMAN, INC. 1875 Century Park East, Ste 1600 Los Angeles, CA 90067 (310) 551-8111 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** 0.00

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Plaintiff claims that Defendant's AB 1183 rate reductions violate, among other things, the federal Medicaid Act, 42 U.S.C. ss. 1396a(a)(30(A), 1396a(a)(8), 1396a(a)(13)(A) and 42 C.F.R. ss. 447.204 and 447.205.

**VII. NATURE OF SUIT** (Place an X in one box only.)

CV09-00722

American LegalNet, Inc.
www.FormsWorkflow.com

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R.& Truck | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities – Other | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☒ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

| FOR OFFICE USE ONLY: | Case Number: | . |
|---|---|---|

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ No ☐ Yes

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☐ No ☒ Yes

If yes, list case number(s): 2:08-cv-03315; 2:09-cv-0382

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☒ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| ACACIA ADULT DAY SERVICES - Orange County | CAL. PHARMACISTS ASSOCIATION - Sacramento County<br>CALIFORNIA MEDICAL ASSOCIATION -  Sacramento County<br>CALIFORNIA DENTAL ASSOCIATION - Sacramento County<br>CALIFORNIA HOSPITAL ASSOCIATION - Sacramento County<br>CAL. ASSOC. FOR ADULT DAY SERV. - Sacramento County<br>SOUTH SACRAMENTO PHARMACY - Sacramento County<br>MARIN APOTHECARY, INC. - Marin County<br>FARMACIA REMEDIOS, INC. - Alameda County<br>SHARP MEMORIAL HOSPITAL - San Diego County<br>GROSSMONT HOSPITAL CORPORATION - San Diego County<br>SHARP CHULA VISTA MEDICAL CENTER - San Diego County<br>SHARP CORONADO HOSP. AND HTHCR. CTR. - San Diego County<br>FEY GARCIA - San Francisco County<br>CHARLES GALLAGHER - Napa County |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| DAVID MAXWELL-JOLLY, DIRECTOR OF THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES - located in Sacramento County but has offices in Los Angeles County | Offices in Sacramento and Los Angeles Counties. |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Each of the claims in the Complaint arose, among other places, in Sacramento County |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

| X. SIGNATURE OF ATTORNEY (OR PRO PER): | Date January 29, 2009 |
|---|---|
| Lloyd A. Bookman | |

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

American LegalNet, Inc.
www.FormsWorkflow.com

Key to Statistical Codes relating to Social Security Cases.

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

**CIVIL COVER SHEET**

American LegalNet, Inc.
www.FormsWorkflow.com

HOOPER, LUNDY & BOOKMAN, INC.
Craig J. Cannizzo (State Bar No. 70379)
575 Market Street, 23rd Floor
San Francisco, California 94105
Telephone: 415.875.8500
Lloyd A. Bookman (State Bar No. 89251)
1875 Century Park East, #1600
Los Angeles, California 90067

ORIGINAL

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| California Pharmacists Association; California Medical Association; California Dental Association; California Hospital Association; California Association for Adult Day Services; Marin Apothecary, Inc. d/b/a Ross Valley Pharmacy; South Sacramento Pharmacy; Farmacia Remedios, Inc.; Acacia Adult Day Services; Sharp Memorial Hospital; Grossmont Hospital Corporation; Sharp Chula Vista Medical Center; Sharp Coronado Hospital and Healthcare Center; Fey Garcia and Charles Gallagher<br>PLAINTIFF(S) | CASE NUMBER<br><br>CV09-00722  CAS (Ex) |
| v.<br><br>David Maxwell-Jolly, Director of the California Department of Health Care Services,<br>DEFENDANT(S). | **SUMMONS** |

TO:DEFENDANT(S): <u>David Maxwell-Jolly, Director of the California Department of Health Care Services</u>

A lawsuit has been filed against you.

Within <u>twenty (20)</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ ____ame nded complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Craig J. Cannizzo</u>, whose address is <u>575 Market Street, Suite 2300, San Francisco, CA 94105</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: **JAN 29 2009** _____     By: _____
                                                                Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                              SUMMONS

American LegalNet, Inc.
www.USCourtForms.com

COPY

HOOPER, LUNDY & BOOKMAN, INC.
Craig J. Cannizzo (State Bar No. 70379)
575 Market Street, 23rd Floor
San Francisco, California 94105
Telephone: 415.875.8500
Lloyd A. Bookman (State Bar No. 89251)
1875 Century Park East, #1600
Los Angeles, California 90067

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| California Pharmacists Association; California Medical Association; California Dental Association; California Hospital Association; California Association for Adult Day Services; Marin Apothecary, Inc. d/b/a Ross Valley Pharmacy; South Sacramento Pharmacy; Farmacia Remedios, Inc.; Acacia Adult Day Services; Sharp Memorial Hospital; Grossmont Hospital Corporation; Sharp Chula Vista Medical Center; Sharp Coronado Hospital and Healthcare Center; Fey Garcia and Charles Gallagher<br><br>PLAINTIFF(S)<br><br>v.<br><br>David Maxwell-Jolly, Director of the California Department of Health Care Services,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV09-00722 CAS (Ex)<br><br><br><br>**SUMMONS** |

TO:DEFENDANT(S): <u>David Maxwell-Jolly, Director of the California Department of Health Care Services</u>

A lawsuit has been filed against you.

Within <u>twenty (20)</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ ame nded complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Craig J. Cannizzo</u>, whose address is <u>575 Market Street, Suite 2300, San Francisco, CA 94105</u> . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: **JAN 29 2009**

By: **LA'REE HORN**
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                              SUMMONS

American LegalNet, Inc.
www.USCourtForms.com